

1994 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

11-9-1994

# Adorno v. Shalala, Sec'y HHS

Precedential or Non-Precedential:

Docket 94-5085

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1994

Recommended Citation

"Adorno v. Shalala, Sec'y HHS" (1994). *1994 Decisions.* Paper 182.
http://digitalcommons.law.villanova.edu/thirdcircuit_1994/182

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1994 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 94-5085
_____


EVELYN ADORNO,
                    Appellant

                v.

DONNA SHALALA, SECRETARY OF
HEALTH AND HUMAN SERVICES,
                    Appellee

_____

Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil Action No. 92-cv-01783)

_____

Submitted Under Third Circuit LAR 34.1(a)
August 10, 1994


PRESENT:  HUTCHINSON and NYGAARD, <u>Circuit Judges</u>,
          and KATZ, <u>District Judge</u>*


(Filed   November 9, 1994)

_____


Dennis P. McGlinchy, Esquire
Ocean-Monmouth Legal Services, Inc.
27 Washington Street
Toms River, NJ     08753
          Attorney for Appellant




_____


*  Hon. Marvin Katz, United States District Judge for the

Eastern District of Pennsylvania, sitting by designation.

Faith S. Hochberg, Esquire
  United States Attorney
John Jeannopoulos, Esquire
  Special Assistant United States Attorney
United States Department of Justice
Room 502
970 Broad Street
Newark, NJ     07102
                    Attorneys for Appellee

                    _____

                    OPINION OF THE COURT
                    _____


HUTCHINSON, <u>Circuit Judge</u>.


        Appellant, Evelyn Adorno ("Adorno"), appeals two orders
of the United States District Court for the District of New
Jersey in favor of appellee, the Secretary of Health and Human
Services ("Secretary").  In its orders, the district court
affirmed the Secretary's final decision to deny Adorno disability
benefits and denied Adorno's motion for reconsideration.  Because
the findings of fact on which the Administrative Law Judge
("ALJ") based its decision are logically inconsistent and
contradictory, we will vacate the district court's order
affirming the Secretary's decision and remand for further
proceedings consistent with this opinion.  On remand, the ALJ
should reconcile the contradictions based on all the evidence in
the record, including Adorno's claimed inability to tolerate
exposure to dust and fumes, and any additional relevant evidence
the parties may produce and, if he again elects to reject the

medical opinions of Adorno's treating physicians, state his reasons for doing so.

## I.

In April, 1990, Adorno filed applications with the Social Security Administration ("SSA") for disability benefits or, in the alternative, supplemental security income ("SSI") under Titles II and XVI of the Social Security Act. She alleged that she had been disabled by the combined effects of asthma, arthritis, and hypertension since June 15, 1989. Adorno's applications for benefits were denied by the SSA initially and upon reconsideration.

On December 24, 1990, Adorno filed a request for a hearing before an ALJ. It was granted, and the hearing was held on February 13, 1991. Represented by counsel, she appeared and testified on her own behalf through an interpreter.

On May 29, 1991, the ALJ determined that Adorno was not disabled and, therefore, could not receive either disability benefits or SSI. The ALJ's decision became final on May 27, 1992 when the Appeals Council denied Adorno's request for review. Adorno then filed a complaint in the district court, pursuant to 42 U.S.C.A. § 405(g) (West 1991), asking the court to review and set aside the Secretary's decision. On October 7, 1993, the district court affirmed the Secretary's final decision finding

Adorno not disabled.  On December 6, 1993, the district court denied Adorno's motion for reconsideration.[1]

Adorno came to the continental United States from Puerto Rico.  When asked by the ALJ how long she had "been in this country," she replied 30 years.  Administrative Record ("Admin. Rec.") at 30.  She was 49 years of age on the date of the ALJ's hearing.  In Puerto Rico, she completed only the second grade and has had no other formal education.  She testified that she cannot speak or read English.

From 1968 to 1989, Adorno worked for Excell Wood as a machine operator and general laborer.  She claims that the dust and fumes encountered at work required her to use asthma medicine.  After leaving Excell Wood, Adorno worked briefly as a packer at Papco Industries, but claims that she had to stop working after only four weeks because of her asthma condition.  Most recently, Adorno worked at Fluid Chemicals but after one week its factory closed because of poor ventilation.  She has not engaged in substantial gainful employment since June 15, 1989.

Since March 1987, Jose R. Sanchez-Pena, M.D. has been Adorno's treating physician.  On Adorno's initial visit, Dr. Sanchez-Pena performed a pulmonary function test and concluded that Adorno was suffering from a "moderate asthmatic condition."  After eighteen visits, Dr. Sanchez-Pena added the afflictions of arthritis, bursitis, pneumonia and kidney stones to the asthma,

---

[1].  Although Adorno lists incorrect dates in her brief, it appears that she appeals both of these orders.

which he now found to be acute. In a letter dated March 30, 1990, Dr. Sanchez-Pena stated that Adorno was permanently and totally disabled.

Adorno also provided a note dated March 29, 1990 from another treating physician, Alfonso Polanco, M.D. It stated that Adorno "has been a patient at this office for acute bronchial asthma." Admin. Rec. at 100. In response to a request from the Division of Disability Determinations ("DDD"), Dr. Polanco sent a copy of his office notes. They showed that Adorno was seen on four occasions in 1989 and 1990 and was treated with Proventil Inhaler, Proventil Repetabs, Theo-Dur and Vasotec for acute bronchial asthma. Id. at 98-99.[2] Neither the ALJ nor the district court referred to this evidence.

In February 1989, Adorno visited a physician named Leslie Aufseeser, D.P.M., for treatment of bone spurs in her heel. Dr. Aufseeser noted in her report that Adorno wanted to undergo surgery but postponed it because of uncertainty over insurance coverage.

On July 11, 1990, the DDD referred Adorno to a consulting physician named Santangelo for a physical

---

[2]. Proventil Inhaler is used "for the prevention and relief of bronchospasm in patients with reversible obstructive airway disease and for the prevention of exercise-induced bronchospasm." Physicians' Desk Reference 2211 (47th ed. 1993). Proventil Repetabs are "for the relief of bronchospasm in patients with reversible obstructive airway disease." Id. at 2213. Theo-Dur is "[f]or relief and/or prevention of symptoms from asthma and reversible bronchospasm associated with chronic bronchitis and emphysema." Id. at 1192. Vasotec is "for treatment of hypertension." Id. at 1621.

examination.[3] Based on an examination and a pulmonary function test, Dr. Santangelo diagnosed Adorno as suffering from a fifteen-year history of asthma and uncontrolled hypertension. Dr. Santangelo's report indicated however that the pulmonary function tests administered to Adorno were within normal limits. In Dr. Santangelo's opinion, Adorno could perform any type of work except work in heavy fumes or dusty environments. Dr. Santangelo disagreed with Dr. Sanchez-Pena's and Dr. Polanco's conclusion that Adorno suffered from acute asthma. Adorno was also treated in hospital emergency rooms on several occasions, including two visits on March 19, 1987 and October 10, 1988 for asthma attacks.[4]

Although Dr. Sanchez-Pena's initial diagnosis of moderate asthma was based on objective scientific data provided by a pulmonary function test, the ALJ concluded this doctor's later diagnosis of "acute asthma" lacked objective data to support it. The ALJ found Dr. Santangelo's medical report more reliable than Dr. Sanchez-Pena's later diagnosis because it was based on a later pulmonary functions test and a physical examination.

---

[3]. Dr. Santangelo's full name is not in the record. Adorno v. Shalala, Civ. No. 92-1783, slip op. at 3 n.2 (D.N.J. Oct. 7, 1993).

[4]. One other incident involved what the district court labeled a "perturbed, overly-aggressive pet rooster." Adorno, slip op. at 3.

II.

The district court had subject matter jurisdiction to review the final decision of the Secretary denying Adorno's application for disability benefits under 42 U.S.C.A. § 405(g) (West 1991) and 42 U.S.C.A. § 1383(c)(3) (West 1992). We have jurisdiction over this appeal from the district court's final judgment in favor of the Secretary under 28 U.S.C.A. § 1291 (West 1993).

"Our standard of review, as was the district court's, is whether the Secretary's decision is supported by substantial evidence in the record." Allen v. Bowen, 881 F.2d 37, 39 (3d Cir. 1989). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).


III.

"The Social Security Act defines disability in terms of the effect a physical or mental impairment has on a person's ability to function in the workplace." Heckler v. Campbell, 461 U.S. 460, 460 (1983); 42 U.S.C.A. § 423(c) (West 1991). Disability benefits are provided for individuals unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12

months." 42 U.S.C.A. § 423(d)(1)(A) (West 1991); Campbell, 461 U.S. at 460. A person is determined to be disabled only if "his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C.A. § 423(d)(2)(A); Campbell, 461 U.S. at 460.

The regulations promulgated by the Secretary to implement these definitions recognize that certain impairments, called listed impairments, are so severe that they are presumed to prevent a person from pursuing any gainful work without further proof of occupational disability. Campbell, 461 U.S. at 460 (citing 20 C.F.R. § 404.1520(d) (1982)). Thus, a claimant who establishes that she suffers from a listed impairment is deemed disabled without further inquiry. Id. If a claimant can pursue her former occupation, she is not entitled to disability benefits. Id. If a claimant suffers from a severe, but unlisted impairment, or a combination of impairments, the Secretary must consider the individual's particular limitations to determine whether the claimant retains the ability to perform either her former work or some less demanding employment. Id.

Adorno, in her first hearing, introduced evidence of only three episodes of asthma over 3-1/2 years. This does not meet the level of severity required for a listed impairment. See 20 C.F.R., pt. 404, subpt. P, app. 1, § 3.03B. For asthma, the

listings require acute episodes at least once every two months or on average at least six times a year. Id.

Adorno thus had the initial burden of proving that she could not pursue her former occupation. Once a claimant establishes her inability to pursue her former occupation, the burden shifts to the Secretary to prove that she retains the capacity to pursue less demanding work. See id. (citing 20 C.F.R. § 404.1520(f)(1)).

Adorno argues that the district court erred in affirming the Secretary's decision to deny her disability benefits because the ALJ did not make findings of fact concerning the nature and demands of her former occupation. Because her undisputed testimony shows her former job exposed her to fumes and heavy dust, and uncontradicted medical evidence shows her asthma precludes such exposure, Adorno contends that the ALJ's determination that she can return to her former job, but not one that exposes her to dust and fumes, is logically inconsistent.

The Secretary, in an effort to make sense of the ALJ's decision seeks to recharacterize Adorno's prior job as a cabinetmaker. Brief of Appellee at 18-19. The Dictionary of Occupational Titles does not list dust and fumes as hazards which accompany a cabinetmaker's job. This attempt to redefine Adorno's former occupation is unsupported by substantial evidence on the whole record. Both the ALJ and the district court describe Adorno's work as a machine operator, which may describe Adorno's former work more aptly. See Admin. Rec. at 11, 14;

Adorno, slip op. at 2.[5]  The contradiction between this finding and Adorno's uncontradicted testimony about her exposure to dust and fumes must be reconciled.

If it appears that Adorno cannot return to her former occupation of machine operator, the ALJ must then determine what type of work Adorno can do in order to see whether her case fits into one of the so-called "grids" designed mechanically to take into account the factors of education, age, skills, and physical ability which affect an impaired claimants employability.  See Campbell, 461 U.S. at 461-62.  On this question, the ALJ found that "within these restrictions the claimant is able to perform her prior work as a machine operator or the full range of light work activity."  Admin. Rec. at 14.

The job of a machine operator is listed as medium work in the Dictionary of Occupational Titles.  Appellant's Appendix ("App.") at 1.  Accordingly, it is impossible to tell whether Adorno is limited to light or medium work.  The ALJ failed to make an unambiguous finding about the kind of work Adorno could do, and whether such work is available.  Such finding is a prerequisite to the proper application of the "grids."

Moreover, the ALJ's discussion of age and education is in only the most conclusory terms and is also tied to his conclusion that Adorno can do a full range of light work.  Absent from the ALJ's decision is any mention of Adorno's physical

_____

[5].  At one point, however, the district court also calls Adorno a "general laborer."  Adorno, slip op. at 2.

abilities. A full inquiry into Adorno's skills and limitations, followed by an assessment of alternate work options in light of those abilities and limitations, is crucial to any logical analysis of her case. The ALJ failed to conduct that inquiry and also failed clearly to relate Adorno's physical impairment(s) to her prior occupation. On remand, the Secretary must determine, on the basis of substantial evidence, what Adorno's prior occupation was and what types of work her abilities and limitations permit. "The regulations divide this last inquiry into two stages." Campbell, 461 U.S. at 460. The Secretary must first assess each claimant's present job qualifications in light of the various factors Congress has identified as relevant: physical ability, age, education, and work experience. Id. The regulations then require the Secretary to make an individual assessment of each claimant's abilities and limitations. Id. This generally requires an opinion from a vocational expert, given in response to a hypothetical question incorporating the physical and occupational limitations that the record shows the claimant suffers from.

The ALJ did consider some of Adorno's particular limitations. He found that Adorno has "the residual functional capacity to perform work-related activities except for work involving heavy exposure to dust and fumes," and that her "past relevant work as a machine operator did not require the performance of work-related activities precluded by the above limitation." Admin. Rec. at 14-15. We have already mentioned the problem with this finding. It does not appear to be

supported by substantial evidence.  The Dictionary of Occupational Titles lists "Machinist, wood" as work accompanied by fumes and dust.  App. at 2.

We also note the ALJ's failure to weigh appropriately the testimony of both of Adorno's attending physicians.  In considering a claim for disability benefits, greater weight should be given to the findings of a treating physician than to a physician who has examined the claimant as a consultant.  See, e.g., Mason v. Shalala, 994 F.2d 1058, 1067 (3d Cir. 1993).  We recognize, of course, that a statement by a plaintiff's treating physician supporting an assertion that she is "disabled" or "unable to work" is not dispositive of the issue.  Wright v. Sullivan, 900 F.2d 675, 683 (3d Cir. 1990).  The ALJ must review all the medical findings and other evidence presented in support of the attending physician's opinion of total disability.  Id.  In doing so, the ALJ must weigh the relative worth of a treating physician's report against the reports submitted by other physicians who have examined the claimant.  See Cotter v. Harris, 642 F.2d 700, 705, reh'g denied, 650 F.2d 481 (3d Cir. 1981).

The record indicates that Dr. Sanchez-Pena and Dr. Polanco are Adorno's treating physicians.  The ALJ and the district court addressed only the opinion of Dr. Sanchez-Pena, and concluded it was not entitled to significant weight.  See Jones v. Sullivan, 954 F.2d 125, 129 (3d Cir. 1991) (an unsupported diagnosis is not entitled to significant weight).  Adorno, however, also points to the testimony of Dr. Polanco and argues that the Secretary failed to give it the weight it

deserved.  In the ALJ's decision, he states that he made his findings "[a]fter careful consideration of the entire record," Admin. Rec. at 14, but the ALJ did not otherwise explain his reasons for not mentioning Dr. Polanco's note indicating that Adorno was treated for "acute asthma."

Adorno relies primarily on the proposition that the Secretary must "explicitly" weigh all relevant, probative and available evidence.  Dobrowolsky v. Califano, 606 F.2d 403, 407 (3d Cir. 1979); see also Brewster v. Heckler, 786 F.2d 581, 584 (3d Cir. 1986); Cotter, 642 F.2d at 705.  The Secretary must provide some explanation for a rejection of probative evidence which would suggest a contrary disposition.  Brewster, 786 F.2d at 585.  The Secretary may properly accept some parts of the medical evidence and reject other parts, but she must consider all the evidence and give some reason for discounting the evidence she rejects.  Stewart v. Secretary of H.E.W., 714 F.2d 287, 290 (3d Cir. 1983).

For these reasons, we will vacate the district court's order and remand for further proceedings.  On remand, if Adorno has carried her initial burden of establishing an impairment so severe that she cannot perform the kind of work in which she was previously engaged, the Secretary has the burden of supplying substantial evidence, usually in the form of a vocational expert's opinion, that establishes Adorno's ability to perform other substantial gainful activity despite her physical problems, limited education, her difficulties with English and her limited occupational skills.

IV.

The order of the district court granting summary judgment to the Secretary will be reversed and the case remanded for further proceedings consistent with this opinion.